Kristine M. Akland
AKLAND LAW FIRM PLLC
P.O. Box 7274
Missoula, MT 59807
(406) 544-9863
aklandlawfirm@gmail.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**,<br><br>Plaintiff,<br><br>v.<br><br>**DAVID BERNHARDT**, Secretary of the Interior; and **MARGARET EVERSON**, Principal Deputy Director of U.S. Fish and Wildlife Service;<br><br>Defendants. | Case No. _____<br><br><br>**COMPLAINT** |

## INTRODUCTION

1.     The Center for Biological Diversity ("the Center") brings this case against David Bernhardt, Secretary of the Interior; and Margaret Everson, Principal Deputy Director of the U.S. Fish and Wildlife Service (collectively the "Service") for violating the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559. Specifically, the

Service has failed to prepare a timely grizzly bear five-year status review in violation of section 4(c) of the ESA, failed to update or amend its outdated grizzly bear recovery plan in violation of section 4(f) of the ESA, failed to evaluate or pursue further grizzly bear recovery in violation of section 7(a)(1) of the ESA, and unreasonably denied the Center's 2014 petition for an updated and amended grizzly bear recovery plan in violation of the APA.

2.      The Service listed grizzly bears in the lower 48 states as "threatened" under the ESA over forty years ago. The Service prepared a grizzly bear recovery plan in 1982 with a revision in 1993 and supplements thereafter. In 2011, the Service released a five-year status review for the grizzly bear, in which the agency found that the 1993 Recovery Plan was no longer based upon the best available science and needed to be updated. The Service specifically noted that the agency must evaluate other areas of the grizzly bear's historic range in the lower 48 states to determine their habitat suitability for grizzly bear recovery, including historic habitat in Colorado, New Mexico, Arizona, Utah, California, Nevada, Oregon, and southern Washington. But the Service never updated the Plan in the manner that the agency itself had said was necessary.

3.      On June 18, 2014, the Center filed a petition asking the Service to amend the 1993 Recovery Plan to include updated biological information and consider other significant areas of suitable habitat across the grizzly bear's historic

range in the western United States. As explained below, the Service unreasonably denied the Center's petition.

4.      Through this litigation, the Center asks the Court for an order providing deadlines for the Service to prepare a timely five-year status review for the grizzly bear, update the recovery plan, and evaluate the need to pursue grizzly bear recovery in additional areas.

## JURISDICTION AND VENUE

5.      This action arises under the ESA, 16 U.S.C. § 1531 *et seq.*, and the APA, 5 U.S.C. §§ 551, 701-706. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201-2202 (declaratory judgments and further relief), 16 U.S.C. § 1540(c), (g)(1)(C) (action arising under the ESA and citizen suit provision), and 5 U.S.C. § 702 (APA). The Center has properly given notice to the Service of its claims under the ESA in accordance with 16 U.S.C. § 1540(g)(2)(C).

6.      Venue in this Court is proper under 28 U.S.C. § 1391(e) because grizzly bears and the Service's Grizzly Bear Recovery Office occur in this District.

## PARTIES

7.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a nonprofit organization dedicated to the protection and restoration of biodiversity. The Center is based in Tucson, Arizona, with offices throughout the

country, including in California, Colorado, Idaho, New Mexico, Nevada, Oregon, Utah, and Washington. The Center has over 1.4 million members and supporters, including many who live within the grizzly's bears current and historic range.

8.     Because the Center values the grizzly bear and its role in promoting healthy ecosystems, the Center places high priority on protecting and recovering the grizzly bear across its range. The Center works toward this goal through education, advocacy, scientific study, and litigation.

9.     For example, on June 18, 2014, the Center filed a petition pursuant to the APA, 5 U.S.C. § 553(e), to the U.S. Department of the Interior and the U.S. Fish and Wildlife Service requesting that the Service update and amend the 1993 Recovery Plan. On September 22, 2014, the Service denied the petition.

10.     The Center's members – including its Board members, supporters, and staff – live, work, recreate, study, and otherwise use and enjoy areas throughout the grizzly bear's current and historic range in the lower 48 states. The Center's members use lands covered by the Center's petition, including the Gila-Mogollon complex in Arizona and New Mexico, the Grand Canyon in Arizona, the Sierra Nevada in California, the Uinta Mountains in Utah, and areas of southern Utah. In such areas, the Center's members frequently engage in hiking, camping, boating, snowshoeing, skiing, wildlife watching, photography, and other activities, and will continue to do so. The Center's members enjoy seeing grizzly bears and

their signs (like tracks and scat) where they live in the wild and would like to see them in more of their historic range.

11. The Center's members have suffered, and will foreseeably continue to suffer, direct injuries to their recreational, aesthetic, scientific, professional, spiritual, and other interests and activities because of the Service's failure to prepare a timely five-year review, update the grizzly bear recovery plan, and evaluate or pursue grizzly bear recovery in additional areas. These are actual, ongoing, concrete injuries, traceable to the Service's inaction, that would be redressed by the relief requested. Specifically, if the Court orders the Service to prepare a five-year status review, update the grizzly bear recovery plan, or evaluate the need to pursue recovery in additional areas, these analyses would further the conservation of grizzly bears and protect the interests of the Center and its members in the species.

12. Defendant DAVID BERNHARDT is the Secretary of the Department of the Interior. The Secretary of the Interior is responsible for making decisions and promulgating regulations under the ESA, including decisions regarding recovery plans and petitions for rulemaking. He is sued in his official capacity.

13. Defendant MARGARET EVERSON is the Principal Deputy Director of the U.S. Fish and Wildlife Service. The Secretary of the Interior has delegated to the U.S. Fish and Wildlife Service, among other things, the authority for

responding to petitions for rulemaking and the responsibility to develop and implement recover plans for non-marine species. She is sued in her official capacity.

## STATEMENT OF FACTS

**A.   THE ESA: THE ROLE OF RECOVERY PLANS AND STATUS REVIEWS**

14.     The Endangered Species Act is intended to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and to "provide a program for the conservation of such species." 16 U.S.C. § 1531(b). The ESA defines "conservation" as the "use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary," *id.* § 1532(3), i.e. to bring about the recovery of species listed as endangered or threatened.  *See id.* § 1532(6), (20) (definitions of "endangered species" and "threatened species").

15.     To carry out the ESA's paramount purpose that listed species be "conserved," section 4(f) of the Act sets forth a detailed process for the development and implementation of recovery plans. Section 4(f)(1) provides that the Service "shall develop and implement [recovery] plans for the conservation and survival of endangered species and threatened species listed pursuant to this

section, unless [it] finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1). The Service, "in developing and implementing recovery plans, shall, to the maximum extent practicable" incorporate "such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species," as well as "objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list." *Id.* § 1533(f)(1)(B)(i), (ii). A recovery plan must, therefore, provide for the recovery of the species.

16.     Reinforcing the importance of recovery plans, Congress provided for public participation in the development and amendment of the plans. For example, prior to final approval of any "new or revised recovery plan," the Service must "provide public notice and an opportunity for public review and comment on such plan," 16 U.S.C. § 1533(f)(4), and the Service "shall consider all information presented during the public comment period prior to approval of the plan." *Id.* § 1533(f)(5). The Service must also "report every two years to the Committee on Environment and Public Works of the Senate and the Committee on Merchant Marine and Fisheries of the House of Representatives on the status of efforts to develop and implement recovery plans for all species listed pursuant to this section and the status of all species for which such plans have been developed." *Id.*

§ 1533(f)(3).

17.    The ESA also requires the Service to regularly assess the status of

listed species. Specifically, section 4(c) requires that the Service "conduct, at least

once every five years, a review of all [listed] species . . . ." 16 U.S.C.

§ 1533(c)(2)(A). Based on that review, the agency can determine whether the

species should maintain its protections or be uplisted or delisted.

*Id.* § 1533(c)(2)(B); *see also* 50 C.F.R. § 424.21.

18.    Section 7(a)(1) of the ESA provides an "affirmative duty" for federal

agencies to conserve listed species. It provides that all federal agencies shall

"utilize their authorities in furtherance of the purposes of this chapter by carrying

out programs for the conservation of endangered species and threatened species

listed . . . ." 16 U.S.C. § 1536(a)(1). This substantive mandate ensures that listed

species benefit from implementation of actions needed for their survival and

recovery, such as those prescribed in recovery plans.

## B.    THE GRIZZLY BEAR AND ITS OUTDATED RECOVERY PLAN AND STATUS REVIEW

19.    The grizzly bear (*Ursus arctos horribilis*) once ranged throughout

most of western North America, from the high Arctic to the Sierra Madre

Occidental of Mexico, and from the coast of California across most of the Greater

Plains. *See* U.S. Fish and Wildlife Service, *Revised Grizzly Bear Recovery Plan* 9

(1993) (hereinafter "1993 Recovery Plan"). Prior to European settlement, scientists estimate that approximately 50,000 grizzly bears may have occupied the western United States between Canada and Mexico. *Id.*

20.      With European settlement of the American West and a federally-funded bounty program aimed at eradication, grizzly bears were shot, trapped, and poisoned, reducing their range and numbers to less than two percent of historic levels. U.S. Fish and Wildlife Service, Grizzly Bear Recovery Office, *Grizzly Bear 5-Year Review: Summary and Evaluation* 28 (2011) (hereinafter "2011 5-Year Review").

21.      Because of its precipitous decline, in 1975 Service listed the grizzly bear as a "threatened" species in the lower 48 states under the ESA. 40 Fed. Reg. 31,734 (July 28, 1975).

22.      In accordance with the ESA, the Service first approved a grizzly bear recovery plan in 1982, revised in 1993, to "delineate reasonable actions that are believed to be required to recover and/or protect" the grizzly bear. 1993 Recovery Plan at i. The Service identified four recovery zones—Yellowstone, Northern Continental Divide, Cabinet-Yaak, and Selkirks—and three evaluation areas—Bitterroot, North Cascades, and San Juan Mountains—for potential recovery. *Id.* at 39-121.

23.      In the 1993 Recovery Plan, the Service also committed to evaluate

"other potential recovery areas throughout the historical range of the grizzly bear," with an analysis "focus[ed] on habitat values, size of the areas, human use and activities in general, relation to other areas where grizzly bears exist, and historical information." *Id.* at 121. The Service anticipated that the analysis would take five years to complete. *Id.*

24.    It has been over 25 years since the Service issued the 1993 Recovery Plan and committed to evaluate other potential recovery areas, yet the Service has failed to do so.

25.    The Service prepared geographically-specific supplements to the recovery plan in 1996, 1997, 2007, 2017, and 2018. The 1996 Supplement provided a recovery chapter for the Bitterroot Ecosystem, and the 1997 Supplement provided a recovery chapter for the North Cascades Ecosystem. The 2007 and 2017 supplements deal with grizzly bears in the Greater Yellowstone Ecosystem. The 2018 Supplement provides "Habitat-based Recovery Criteria for the Northern Continental Divide Ecosystem."

26.    With these supplements in place, the 1993 Recovery Plan calls for recovery of grizzly bears in six identified recovery areas: 1) the Greater Yellowstone Ecosystem, 2) the Northern Continental Divide Ecosystem, 3) the Cabinet-Yaak Ecosystem, 4) the Selkirk Ecosystem, 5) the North Cascade Ecosystem, and 6) the Bitterroot Ecosystem. The six recovery areas are generally

limited to the northern Rockies in Idaho, Wyoming, Montana, and the North Cascades in Washington.

27.    The Service did not prepare any supplements to designate the San Juan Mountains evaluation area as a recovery area, or to analyze and evaluate other areas of the grizzly bear's historic range as potential recovery areas.

28.    In August 2011, the Service published its last five-year review for grizzly bears. In the 2011 5-Year Review, the Service again specifically noted that "other areas throughout the historic range of the grizzly bear in the lower 48 States should be evaluated to determine their habitat suitability for grizzly bear recovery," including "Colorado, New Mexico, Arizona, Utah, California, Nevada, Oregon, and southern Washington (mountain ranges in the western U.S.)."  2011 5-Year Review at 107. Still, the Service has not undertaken such an evaluation of other areas in the grizzly bear's historic range.

29.    In the 2011 5-Year Review, the Service also explained that except for the geographically-focused supplements, "the recovery plan and the associated recovery criteria have not been updated since the plan was released in 1993" and "no longer reflects the best available and most up-to-date information on the biology of the species and its habitat." 2011 5-Year Review at 14-15. And in the section of the 2011 5-Year Review entitled "Recommendations for Future Actions," the Service listed, as its first recommendation, the need to "[r]evise the

recovery plan . . . so that it reflects the best scientific and commercial information available." *Id.* at 105. The Service published revised demographic recovery criteria for the Yellowstone Ecosystem in 2017 and habitat-based recovery criteria for the Northern Continental Divide Ecosystem in 2018. But the Service never updated the demographic recovery criteria for other recovery areas or otherwise updated the outdated information in the Plan that the agency identified in the 2011 5-Year Review.

30.    Additionally, although the Act requires that the Service prepare status reviews every five years, nearly eight years have passed since the Service's last review in 2011.

31.    According to the most recent estimates available, fewer than 1,900 grizzly bears survive in the lower 48 states. U.S. Fish and Wildlife Service, *Grizzly Bear Recovery Program 2018 Annual Report* (2018). The bears likely exist in four of the six identified recovery areas – not the Bitterroot Ecosystem and probably not in the North Cascade Ecosystem – and nowhere else in the bear's historic range in the lower 48 states. *Id.*

## C.    THE CENTER'S PETITION TO UPDATE AND AMEND THE GRIZZLY BEAR RECOVERY PLAN

32.    On June 18, 2014, the Center submitted to the Service a formal petition, pursuant to the APA, 5 U.S.C. § 553(e), for the development of an

updated and amended recovery plan for the grizzly bear. *See* Center for Biological Diversity, *Petition for a Recovery Plan for the Grizzly Bear* (Ursus arctos horribilis) *Across Its Native Range in the Conterminous United States* 2 (2014). Specifically, the Center requested that the Service update the 1993 Recovery Plan to "include all significant remaining areas of suitable habitat across the grizzly bear's native range in the western U.S." *Id.* The Center requested that the Service consider recovery in at least the Gila/Mogollon complex in Arizona and New Mexico, the Grand Canyon in Arizona, the Sierra Nevada in California, the Uinta Mountains in Utah, and areas of southern Utah. The Center's petition reviewed numerous scientific publications in explaining that these areas likely provide suitable habitat for grizzly bears. The Center also requested that the Service update demographic parameters for all grizzly bear populations, as well as other outdated biological information.

33.     On September 22, 2014, the Service denied the Center's petition.

34.     The Service asserted that "[r]ecovery plans are not rules under the APA," and thus "Section 553(e) does not provide the right to petition for the issuance of a recovery plan."

35.     The Service further stated that it had "satisfied [its] statutory responsibilities for recovery planning and implementation." It also stated that the agency intended to focus on the "six ecosystems identified and covered by

individual chapters in the recovery plan," and that "any additional recovery planning is subject to Service prioritization and is discretionary."

36.     In its denial letter, the Service did not acknowledge its previous commitments, made in the 1993 Recovery Plan and in the 2011 5-Year Review, to analyze other areas of suitable habitat for grizzly bear recovery. Nor did the agency acknowledge its finding in the 2011 5-Year Review that the existing grizzly bear recovery plan is outdated and fails to reflect the best available science.

37.     Rather than prepare the updated recovery plan requested in the Center's petition, the Service instead moved toward prematurely and unlawfully removing the grizzly bear's ESA protections. The Service proposed in 2016 and finalized in 2017 a rule to delist the Greater Yellowstone Ecosystem population of grizzly bears. *See* 81 Fed. Reg. 13,173, 13,227 (Mar. 11, 2016); 82 Fed. Reg. 30,502 (June 30, 2017). In 2018, the Court reinstated the population's ESA protections after ruling that the Service's delisting decision was unlawful. *Crow Indian Tribe v. United States*, 343 F. Supp. 3d 999, 1003 (D. Mont. 2018).

## FIRST CLAIM FOR RELIEF

### ESA Section 4(c): Failure to prepare a timely five-year status review for the grizzly bear

38.     The Center hereby realleges and incorporates all preceding paragraphs.

39.     Section 4(c) of the ESA requires that the Service prepare a status review for each listed species "at least once every five years." 16 U.S.C. § 1533(c)(2)(A); *see also* 50 C.F.R. § 424.21.

40.     The Service last prepared a status review for the grizzly bear in 2011.

41.     Because more than five years have passed since the Service prepared a five-year status review for the grizzly bear, the Service has violated its nondiscretionary duty to do so under ESA section 4(c), 16 U.S.C. § 1533(c)(2)(A).

<u>**SECOND CLAIM FOR RELIEF**</u>

**ESA Section 4(f): Failure to "develop and implement" a plan that provides for the "conservation and survival" of the species**

42.     The Center hereby realleges and incorporates all preceding paragraphs.

43.     Under section 4(f) of the ESA, the Service has a non-discretionary duty to "develop and implement" recovery plans for the "conservation and survival" of listed species. 16 U.S.C. § 1533(f)(1).

44.     The Service in the 1993 Recovery Plan committed to "evaluate the feasibility of grizzly bear recovery in the San Juan Mountains of Colorado and other potential recovery areas throughout the historical range of the grizzly bear . . . ." 1993 Recovery Plan at 121. The Service expected that the analysis would take five years to complete. *Id.*

45.     The Service has never updated the grizzly bear recovery plan to evaluate the San Juan Mountains of Colorado or other potential recovery areas throughout the historical range of the grizzly bear.

46.     The Service must "evaluate the San Juan Mountains of Colorado and other potential recovery areas throughout the historical range of the grizzly bear" because the 1993 Recovery Plan requires it, and the Service "shall develop and implement" recovery plans for the "conservation and survival" of listed species. 16 U.S.C. § 1533(f)(1).

47.     Moreover, the 1993 Recovery Plan's direction to "evaluate the feasibility of grizzly bear recovery in the San Juan Mountains of Colorado and other potential recovery areas throughout the historical range of the grizzly bear," 1993 Recovery Plan at 121, is one of the "site-specific management actions" that the Service found "necessary to achieve the plan's goal for the conservation and survival of the species." 16 U.S.C. § 1533(f)(1)(B)(i); *see also* 2011 5-Year Review at 107 (explaining that "other areas throughout the historic range of the grizzly bear in the lower 48 States should be evaluated to determine their habitat suitability for grizzly bear recovery," including "Colorado, New Mexico, Arizona, Utah, California, Nevada, Oregon, and southern Washington (mountain ranges in the western U.S.)").

48.     "Conservation" of the grizzly bear cannot be achieved if the Service

pursues recovery only in the northern Rockies and the North Cascades because the grizzly bear once ranged throughout most of western North America. Recovery in additional areas is a prerequisite to getting the grizzly bear "to the point at which the measures provided pursuant to this Act are no longer necessary." 16 U.S.C. § 1532(3); *see id.* § 1532(20) (definition of "threatened species").

49.     Furthermore, the Service explained in the 2011 5-Year Review that except for the supplements covering specifically identified recovery areas, "the recovery plan and the associated recovery criteria have not been updated since the plan was released in 1993" and "no longer reflects the best available and most up-to-date information on the biology of the species and its habitat." 2011 5-Year Review at 14-15. The Service released supplements in 2017 and 2018 that cover the Yellowstone Ecosystem and the Northern Continental Divide Ecosystem, but it has failed to complete any other updates to reflect the best available information on grizzly bear biology.

50.     Because the Service never updated the 1993 Recovery Plan to evaluate additional areas within the bear's historic range, as the Service said it would, and because the 1993 Recovery Plan no longer reflects the best available science, as the Service found, the Service has failed to "develop and implement" a plan for the "conservation and survival" of the grizzly bear, in violation of ESA section 4(f), 16 U.S.C. § 1533(f)(1).

## THIRD CLAIM FOR RELIEF

**ESA Section 7(a)(1) and APA: Violation of the affirmative duty to conserve the grizzly bear in refusing to evaluate or pursue grizzly bear recovery in additional areas**

51.     The Center hereby realleges and incorporates all preceding paragraphs.

52.     Section 7(a)(1) of the ESA provides an "affirmative duty" for federal agencies to conserve listed species. Under section 7(a)(1), all federal agencies have a non-discretionary duty to "utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species listed . . . ." 16 U.S.C. § 1536(a)(1). The ESA broadly defines "conservation" to mean "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this Act are no longer necessary." 16 U.S.C. § 1532(3).

53.     In the 1993 Recovery Plan, the Service stated that it would evaluate within five years the "San Juan Mountains of Colorado and other potential recovery areas throughout the historical range of the grizzly bear . . . ." 1993 Recovery Plan at 121. In the 2011 5-Year Review, the Service specifically noted that "other areas throughout the historic range of the grizzly bear in the lower 48 States should be evaluated to determine their habitat suitability for grizzly bear

recovery," including "Colorado, New Mexico, Arizona, Utah, California, Nevada, Oregon, and southern Washington (mountain ranges in the western U.S.)." 2011 5-Year Review at 107.

54.    The Service has not updated its recovery plan to evaluate other areas throughout the historic range of the grizzly bear, even though it committed to do so in the 1993 Recovery Plan and the 2011 5-Year Review.

55.    The Service has refused to pursue grizzly bear recovery in additional areas, even though the bear's numbers and range are less than two percent of historic levels. 2011 5-Year Review at 28.

56.    "Conservation" of the grizzly bear cannot be achieved if the Service pursues recovery only in the northern Rockies and the North Cascades because the grizzly bear once ranged throughout most of western North America. Recovery in additional areas is a prerequisite to getting the grizzly bear "to the point at which the measures provided pursuant to this Act are no longer necessary." 16 U.S.C. § 1532(3); *see id.* § 1532(20) (definition of "threatened species").

57.    Because the Service has not updated its recovery plan to evaluate additional areas within the bear's historic range or otherwise pursue recovery in those additional areas, the Service has not adequately "utilize[d its] authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species listed," in violation of

ESA section 7(a)(1), 16 U.S.C. § 1536(a)(1).

58.     The Service's violation of the ESA's section 7(a)(1) affirmative duty

to conserve is arbitrary, capricious, an abuse of discretion, and not in accordance

with law, in violation of the APA, 5 U.S.C. § 706(2)(A).

## FOURTH CLAIM FOR RELIEF

### APA Violation: Unreasonable denial of the Center's petition

59.     The Center hereby realleges and incorporates all preceding

paragraphs.

60.     The APA provides that any interested person has "the right to petition

for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e).

61.     Under the APA, a "rule" is defined as "the whole or a part of an

agency statement of general or particular applicability and future effect designed to

implement, interpret, or prescribe law or policy." *Id.* § 551(4). "The term 'rule'

may embrace 'virtually every statement an agency may make . . . .'" *Animal Legal*

*Def. Fund v. Veneman*, 469 F.3d 826, 838-40 (9th Cir. 2006).

62.     Under the framework established by Congress for avoiding the

extinction and facilitating the recovery of endangered and threatened species,

recovery plans prepared in accordance with ESA section 4(f) satisfy the criteria for

a "rule" as defined by the APA. Recovery plans, like other rules, must be adopted

in accordance with notice and comment procedures, and the Service is obligated to

consider information submitted by the public before adoption. 16 U.S.C.

§ 1533(f)(4)-(5). The Service is expressly mandated to "develop and implement"

recovery plans and to incorporate particular items into them. *Id.* § 1533(f)(1). The

Service must report to Congressional committees on the status of efforts to develop

and implement such plans. *See supra* ¶ 16. In addition, the Service takes such plans

into consideration when carrying out its other duties under the ESA, including

when the Service conducts section 7 consultations with federal agencies taking

actions that may affect listed species. *See* 16 U.S.C. § 1536(a)(2).

63.     As just one example, the recovery plan for the Mexican spotted owl

explains that "National Forest Plans were amended in 1996 to incorporate

management recommendations presented in the 1995 Recovery Plan for the

Mexican spotted owl." U.S. Fish and Wildlife Service, *Mexican Spotted Owl*

*Recovery Plan, First Revision* VI (2012). This shows that recovery plans are of

"general or particular applicability" "designed to implement … policy" regarding

endangered species conservation because they prescribe needed recovery actions,

and that recovery plans have "future effect" because they are, in fact, implemented

with some success, including by other federal agencies.

64.     The 1993 Grizzly Bear Recovery Plan – which the Center sought to

amend and update through its petition – is a rule under the APA. The Plan provides

a "basic road map to recovery." *Fund for Animals v. Babbitt*, 903 F. Supp. 96

(D.D.C. 1995). The 1993 Recovery Plan is therefore of "general or particular applicability" because it describes the actions necessary to attain grizzly bear recovery, including actions for federal and state agencies to implement. The 1993 Recovery Plan is of "future effect" because it encourages future actions to effectuate future recovery of grizzly bears. The 1993 Recovery Plan is "designed to implement . . . policy" because the plan lists actions necessary to effectuate recovery of the grizzly bear to promote the policies and requirements of the ESA, in accordance with section 4(f), 16 U.S.C. § 1533(f).

65.     Accordingly, the Service's rejection of the Center's petition – on the principal grounds that recovery plans cannot satisfy the definition of a "rule" and hence the Center had no "right to petition for revision of a recovery plan"– violates the APA, 5 U.S.C. § 706(2)(A).

66.     The Service's secondary rationale for denying the petition – that it has discretion to restrict its recovery efforts to existing recovery units – is also arbitrary and capricious. The Service did not explain its departure from its longstanding commitments, including as stated in the 1993 Recovery Plan, to evaluate other areas of historic habitat for grizzly bear recovery. Given its commitments and section 4(f)'s mandate to "develop and implement" recovery plans, the Service has a non-discretionary duty evaluate additional areas for grizzly bear recovery.

67.     Rather than act consistent with its duty, the Service instead stated in

its response to the petition that it would "evaluate the feasibility of grizzly bear recovery in potential recovery areas throughout the historic range of the grizzly bear when resources allow in the future." It did not set forth when "in the future" this long-delayed evaluation would occur and did not provide any factual basis for the Service's suggestion that it presently lacks the necessary resources to revise, or even begin the revision of, the 1993 Recovery Plan to encompass additional historical areas. The Service's response is tantamount to a concession that the Service has no intention of amending the 1993 Recovery Plan at any time in the foreseeable future, if ever, even though that position reverses without explanation the agency's prior position on the need to update the Plan and evaluate grizzly bear recovery in other portions of the species' historic range.

68.     As a matter of law, recovery plans in general qualify as rules under the APA, and the 1993 Recovery Plan that the Center specifically seeks to update and amend qualifies as a rule. As such, and because the Service has a legal duty to evaluate additional areas for recovery, as the Service committed to do and as the Center requested in the petition, the Service's denial of the Center's petition is arbitrary and capricious, an abuse of discretion, or not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A).

## **PRAYER FOR RELIEF**

The Center respectfully requests that the Court grant the following relief:

A.     Declare and adjudge that the Service failed to prepare a timely five-year status review for the grizzly bear, in violation of section 4(c), 16 U.S.C. § 1533(c);

B.     Remand for the Service to prepare a five-year status review for the grizzly bear according to a timetable established by the Court;

C.     Declare and adjudge that the Service violated section 4(f) of the ESA, 16 U.S.C. § 1533(f), by failing to develop and implement a recovery plan that provides for the "conservation and survival" of the grizzly bear;

D.     Declare and adjudge that the Service by refusing to evaluate or pursue grizzly bear recovery in additional areas has failed to satisfy the ESA's section 7(a)(1) affirmative duty to conserve the grizzly bear, 16 U.S.C. 1536(a)(1), in violation of the APA, 5 U.S.C. § 706(2)(A);

E.     Remand for the Service to evaluate the need for grizzly bear recovery in additional areas and prepare an updated recovery plan for the grizzly bear according to a timetable established by the Court;

F.     Declare and adjudge that the Service violated the APA by denying the Center's petition for an updated and amended grizzly bear recovery plan;

G.     Remand for the Service to provide a further response to the Center's petition in accordance with instructions and a timetable established by the Court;

H.     Award the Center its reasonable fees, costs and expenses associated

with this litigation under 16 U.S.C. § 1540(g)(4) and 28 U.S.C. § 2412; and

I.     Grant such further and other relief as the Court deems just and proper

to remedy the Service's violations of law.

Respectfully submitted this 27th day of June, 2019.

/s/ Collette L. Adkins
Collette L. Adkins*
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 595
Circle Pines, MN 55014-0595
(651) 955-3821
cadkins@biologicaldiversity.org

/s/ Andrea Santarsiere
Andrea Santarsiere*
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 469
Victor, ID 83455
(303) 854-7748
asantarsiere@biologicaldiversity.org

/s/ Kristine M. Akland
Kristine M. Akland
AKLAND LAW FIRM PLLC
P.O. Box 7274
Missoula, MT 59807
(406) 544-9863
aklandlawfirm@gmail.com

*Attorneys for Plaintiff*

*Seeking admission pro hac vice*