

FILED
MAR 0 9 2020
Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID BERNHARDT, Secretary of the U.S. Department of the Interior; and MARGARET EVERSON, Principal Deputy Director of U.S. Fish and Wildlife Service,<br><br>Defendants,<br><br>STATE OF WYOMING, STATE OF IDAHO, WYOMING STOCK GROWERS' ASSOCIATION, WYOMING FARM BUREAU FEDERATION, UTAH FARM BUREAU FEDERATION,<br><br>Defendant-Intervenors. | CV 19–109–M–DLC<br><br><br>ORDER |

Before the Court is Plaintiff Center for Biological Diversity's ("Center") Motion to Challenge the Administrative Record. (Doc. 41.) Center argues that the Secretary of the Interior and the Director of the U.S. Fish and Wildlife Service (together "Federal Defendants") failed to provide a complete administrative record in response to Center's suit alleging that Federal Defendants failed to "update the

-1-

outdated grizzly bear recovery plan to include current biological information and evaluate additional areas for recovery" as required under the Endangered Species Act ("ESA") and Administrative Procedures Act ("APA"). (Doc. 42 at 8.) For the reasons that follow, Center's motion will be granted in part and denied in part.

## Discussion

Center requests that this Court: (1) supplement the administrative record with seven documents that Center received in response to Freedom of Information Act ("FOIA") requests, or in the alternative, recognize that in reviewing its "failure to act" claim brought under the ESA, the Court is not limited to review of the administrative record; (2) order Federal Defendants to include any other documents that were improperly withheld from the administrative record; and (3) produce a privilege log for any materials the agency has withheld on the basis of the deliberative process privilege. (*Id.* at 16–17.) Federal Defendants assert that they have produced a complete administrative record because deliberative materials generated during the decision-making process are outside the scope of the administrative record. (Doc. 43 at 13.) For this reason, Federal Defendants assert that no privilege log is required because they have not withheld any documents on the basis of a privilege. (*Id.*) However, if the Court disagrees, Federal Defendants reserve the right to assert the deliberative-process privilege in the future. (*Id.* n.1.)

The Court will first address Federal Defendants contention that deliberative materials are categorically excluded from the administrative record in response to Center's request to compel Federal Defendants to complete the record with all deliberative documents. The Court will then address Center's request to supplement the record with the seven attached exhibits.

**I.      Scope of the Administrative Record**

Under the APA, a court reviewing an agency's decision is instructed to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. "The whole record" is "everything that was before the agency pertaining to the merits of its decision," *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993), which includes "all documents and materials directly or indirectly considered by agency decision-makers [including] evidence contrary to the agency's position," *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citations omitted). An agency is entitled to a presumption that the record as submitted is complete. *Native Ecosystems Council v. Marten*, 334 F. Supp. 3d 1124, 1129 (D. Mont. 2018). "A plaintiff may rebut this presumption with clear evidence to the contrary." *Indigenous Envtl. Network v. United States Dep't of State*, No. CV-17-29-GF-BMM, 2018 WL 1796217, at *2 (D. Mont. Apr. 16, 2018).

Federal Defendants assert that deliberative, process-based documents are not part of the administrative record because they were not "before" the decision-maker nor "considered" in the process of reaching a decision. (*Id.* at 14.) Federal Defendants analogize to judicial decision-making: "When a district court decision is appealed, the court of appeals evaluates the trial court's final decision on the record before it, including the evidence reviewed by the trial court, but does not scrutinize the judge's deliberative materials, bench memorandums, draft opinions or communications with staff." (*Id.* at 15.) This analogy is not entirely apt. Jeffrey C. Dobbins, *New Evidence on Appeal*, 96 Minn. L. Rev. 2016, 2027 (2012). First, unlike appellate review of a district court, this Court's deferential review of an agency decision entails a process-based inquiry. *See, e.g., Shumaker v. Astrue*, 657 F. Supp. 2d 1178, 1181 (D. Mont. 2009) (reviewing the Commissioner's decision for substantial evidence); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by* Califano v. Sanders, 430 U.S. 99 (1977) (reviewing the Secretary's decision to determine whether it was supported by relevant factors); *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1239 (9th Cir. 2005) (reviewing NEPA challenge to see whether the Forest Service took a "hard look" at the proposed project). Second, unlike judicial record-making which is governed by formalized rules, the process of compiling the administrative record is "much more poorly defined." Dobbins, *supra* at 2027.

While the record developed before a trial court is compiled through the adversary system, the administrative record is compiled by the agency after litigation has commenced and its contents are subject to the agency's internal guidance and discretion. Aram A. Gavoor & Steven A. Platt, *Administrative Records and the Courts*, 67 U. Kan. L. Rev. 1, 11–14 (2018). Although the agency benefits from a presumption that the record as submitted is complete, the agency must still comply with its duty to provide the "whole record."

When it comes to interpreting the "whole record," the Supreme Court has offered only sparse guidance on the subject. In *Overton Park*, the Supreme Court reviewed the Secretary of Transportation's decision to enact a six-lane highway through an urban park. 401 U.S. at 411. This decision was permissible under federal law so long as the Secretary determined that there was no feasible and prudent alternative. *Id.* The Court reviewed this decision under the arbitrary and capricious standard, which required it to examine "whether the decision was based on a consideration of the relevant factors and whether there had been a clear error of judgment." *Id.* at 416. The Court recognized that such a determination was impossible on the "bare record" before it. *Id.* at 420. The Secretary had not made formalize findings—which the Court decided was not required so long as there was other evidence in the record that would explain the Secretary's reasoning. *Id.* at 417–19. However, the agency had not provided any contemporaneous record of

that decision. *Id.* at 409. Instead, it produced affidavits prepared for litigation which the Court characterized as "post-hoc rationalizations" for its action. *Id.* at 419. Ultimately, the Court remanded to the district court to review "the full administrative record" including a consideration of contemporaneous or subsequently-generated documents that shed light on the agency's decision-making process. *Id.* at 420. The Court recognized that if such documents did not exist, the district court might require "administrative officials who participated in the decision to give testimony explaining their action." *Id.* In the event the Court requested such testimony, it instructed that "inquiry into the mental processes of administrative decisionmakers is usually to be avoided." *Id.* (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)).

The Court in *Overton Park* did not imply that documents and written correspondence that revealed the agency's decision-making process are off limits in administrative review cases. To the contrary, the Court recognized that a document that sheds light on the factors considered by an agency is often essential to determine whether the agency's decision was arbitrary and capricious. When a record before a district court is so sparse that the court must take testimony from the agency actors themselves, the Court instructed that "inquiry into the mental processes" should generally be avoided, but this does not mean that inter-agency communications which highlight such mental processes are similarly off limits.

Despite *Overton Park*'s seemingly broad interpretation of the "whole record," Federal Defendants urge the Court to recognize the reasoning of the D.C. Circuit which it contends supports its view that deliberative materials fall outside of the administrative record. (Doc. 43 at 16 (citing *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 44 (D.C. Cir. 1986) and *Oceana v. Ross*, 920 F.3d 855, 856 (D.C. Cir. 2019)).) In the absence of Ninth Circuit law on point, Federal Defendants urge the Court to follow other district courts within the Ninth Circuit that have found the D.C. Circuit's reasoning persuasive. (Doc. 43 at 18 (collecting cases).) Center notes that numerous other districts within the Ninth Circuit have rejected the D.C. Circuit's reasoning. (Doc. 42 at 20 (citing *Indigenous Envtl. Network*, 2018 WL 1796217, at *2).)

Without the benefit of Ninth Circuit precedent, the Court is convinced that the better view is that the "whole record" includes deliberative materials that were "directly or indirectly considered by agency decision-makers." *Thompson*, 885 F.2d at 555. When tasked with review of an agency decision under the APA, it is essential that the Court understand the agency's reasons for its decision. This includes the agency's stated reasons but may also include draft or deliberative documents exchanged in the course of reaching a decision.

"[U]nder some circumstances, predecisional deliberative communications may go to the heart of the question of whether an agency action was arbitrary and

capricious, an abuse of discretion or otherwise inconsistent with the law[.]" *Desert Survivors v. US Dep't of the Interior*, 231 F. Supp. 3d 368, 382 (N.D. Cal. 2017). For example, in the environmental context, where a regional agency receives instruction from Washington to justify a decision that has already been made on policy grounds before a meaningful review of a proposed action has taken place, *see Center for Biological Diversity v. Kempthorne*, No. CV 07-0038-PHX-MHM, 2008 WL 659822 (D. Ariz. Mar. 6, 2008), evidence of such correspondence is equivalent to a "smoking gun" because it indicates that a decision was improper. *Desert Survivors*, 231 F. Supp. 3d at 382. In this circumstance, an administrative record that fails to include such communication amounts to a "fictional account of the actual decisionmaking process." *Portland Audubon Soc.*, 984 F.2d at 154 (quoting *Home Box Office, Inc. v. Federal Communications Comm'n*, 567 F.2d 9, 54 (D.C. Cir. 1977)). For this reason, deliberative documents are not categorically excluded from the administrative record. *Sierra Club v. Zinke*, No. 17-CV-07187-WHO, 2018 WL 3126401, at *3 (N.D. Cal. June 26, 2018) ("This district has repeatedly required deliberative materials (such as internal comments, draft reports, emails, and meeting notes) to be added to the administrative record if they were considered in the agency's decision."). This is not to say that deliberative documents must always be included. The agency may protect such documents by

asserting the qualified deliberative process privilege but must produce a privilege log to do so.

Turning now to Center's request to compel Federal Defendants to produce additional "internal analysis . . . emails and drafts," the Court recognizes that such a request should not be granted unless Center prevails over the presumption of completeness. This is not a tall order where, as here, Federal Defendants all but concede that the administrative record is not complete by acknowledging that they have failed to include deliberative documents. Nevertheless, Center has overcome this presumption. Center notes that the administrative record contains only one email and two draft documents (those issued to the public during the NEPA process) (*Id.* at 18–19)—where a typical record often includes dozens of emails and numerous drafts. In "an era when most work—including decision-making—is carried out over email" (*Id.* at 18), it is doubtful that the email submitted in the record represents the sum of all relevant emails that were before the agency in reaching a decision. Additionally, Center has produced three draft exhibits that were similarly before the agency but not produced. (Doc. 42-5, 42-6, 42-7.) These documents contain feedback from the agency's scientists on which sections of the recovery plan are outdated. Accordingly, the Court will compel Federal Defendants to supplement the record with "all documents and materials directly or

indirectly considered by agency decision-makers," *Thompson*, 885 F.2d at 555, including pre-decisonal deliberative materials.

## II. Supplementation

Having rejected Federal Defendants argument that all deliberative documents are per se excluded, the Court will turn to Center's request to expand the administrative record with the seven attached exhibits. (Doc. 42 at 16–17.) Alternatively, Center seeks a declaration from the Court that in reviewing ESA citizen suit cases, the Court is not limited to review of the administrative record. (*Id.* at 25–27.)

Turning to the later contention first, the Court has already determined that review of an ESA case is limited to a review of the record. *Native Ecosystems Council*, 334 F. Supp. 3d at 1129. "However, the whole administrative record is not necessarily what has been submitted by the agency[.]" *Id.* A party may seek to expand the record by demonstrating: (1) an additional document is "necessary to determine whether the agency has considered all relevant factors and explained its decision," (2) the agency relied on a document not in the record; (3) an additional document is "necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." *Id.*

Center seeks to include seven documents that it uncovered through FOIA requests. Center first seeks to include three draft documents that identify "specific

aspects of the Cabinet-Yaak and Selkirk recovery chapter that contain outdated or inaccurate information." (*Id.* at 28 (referencing exhibits 5–7).) The Court agrees that feedback provided by agency scientists indicating where agency action is outdated is information that was "considered" by the agency regardless of whether the agency ultimately adopted or disregarded that feedback. These documents are admissible under the second exception as a document that the agency relied on but was not included in the record.

Additionally, the Court will permit Center to supplement the record with exhibit 3, which is an email chain coordinating the agency's message to the media. Center observes that an email in the chain suggests that the Service provided an additional reason for its denial which is not contained in the record of its decision—that the additional recovery areas requested in the Petition "are no longer capable of supporting" grizzly bears. (Doc. 44 at 7.) Exhibit three is admitted under the first exception as "necessary to determine whether the agency has considered all relevant factors and explained its decision[.]"

The Court will deny Center's request to supplement the record with the additional exhibits as these pertain to post-decisional communications or to this litigation. None of these documents contain information that explains the agency's decision nor were these documents before the agency in reaching its decision.

IT IS ORDERED that Center's Motion (Doc. 41) is granted in part and denied in part. Center's request that exhibits 42-3, 42-5, 42-6, and 42-7 be admitted to the record is GRANTED. Its request to admit the remaining exhibits is DENIED. Federal Defendants are instructed to complete the record with all documents and materials directly or indirectly considered by agency decision-makers including deliberative pre-decisional materials. To the extent Federal Defendants withhold these materials, they must assert a privilege log.

DATED this 9th day of March, 2020.

Dana L. Christensen, Chief Judge
United States District Court